Purchasers are not to be affected by errors or irregularity of proceeding. All that is incumbent on them to know is, that there is a judgment and execution. It is not necessary for them to show all the proceedings that have taken place in a cause. Nor is the return of an execution necessary to the validity of their title. Let the deed be read.
WHITE, for the defendants, now offered evidence, showing that Samuel Vance once made a deed to Stinson the father, which was now destroyed, and a deed afterwards made by Vance to the sons, the lessors of the plaintiff; and circumstances to show that it was done with a fraudulent intent in the father to deprive his creditors of remedy.
MILLER, for the plaintiff. — The deed from Vance to the father was never registered, and the deed to the lessors of the plaintiff by Vance was, made before the rendition of the judgment; and consequently this land never was bound by the judgment. If Stinson the father ever had an interest, it must have been a resulting trust, in consequence of the payment of the consideration money. This is such an *Page 45 
interest as is not liable to execution any more than pledges or equitable rights. A right, to be subject to execution, should be such a one as to afford possession or actual enjoyment. It should be a legal right. A deed does not convey a legal right unless registered. 1715, c. 38, § 5. The law is clear that a legal title to land cannot be acquired except by deed registered. There was no legal title in Stinson to be sold; I ask whether the plaintiff could support an ejectment without title? He could not; nor, upon parity of reasoning, can the defendant maintain his defence against a legal title unless he has one. It is contended that the conveyance to the sons of Stinson is void on the ground of fraud. Suppose it was, this could not better the defendant's situation, there being no such interest in the father as was subject to execution. A deed procured to be made by a person who is indebted, not to himself, but to a third person is not void. Rob. on Fraudulent Conveyances, 467. Whether it be voidable in equity, I will not undertake to say. Deeds are good at law, on the ground of alleged fraud, unless they are void by statute. Agreeably to the statute of the 27th Eliz., there can be no such thing as a fraudulent purchase. There may be a fraudulent sale. In this case, no fraud is pretended in the person conveying, nor in the sons, to whom conveyed. At the time of the judgment, the title was in the sons.
M'KENNEY, for the defendants.
We wish to prove that a deed from Vance to Stinson the father was in existence before our judgment. Agreeably to many cases in our courts, if the deed was in existence we could give it in evidence without being registered. If so, we ought to be permitted to prove its loss and contents. There is no distinction, in the rules of evidence, between real and personal estate. Though there may be a chasm in our title papers, we are entitled to proceed. 1 Hay. 42; 2 Hay. 351. If a deed be once made, and lost, the title does not revest. 1 Hay. 99. In making the deed to the sons Vance acted as the agent of Stinson the father, and must be esteemed the act of *Page 46 
Stinson himself. The deed to the sons is absolutely void, not voidable. 1 Har. c. 21.
It is not required of us to give better evidence than the nature of the case admits. Esp. 772. Deeds have been presumed where none were shown, and counterparts admitted. 2 Hay. 76. We know that a patent from the State always expresses that if it is not registered within the time prescribed by law it shall be void, yet it is not so; so with respect to the deed to Stinson the father. There was fraud, which renders this deed to the sons absolutely void. There is no necessity to go into a court of equity to avoid that which, of itself, is void. As to ancient deeds, he read 2 Hay. 278.
PARSONS, on the same side, read 1 Burr. 396, and 1 Bac. Ab. 325, Cun. ed., to show that fraud was cognizable at law as well as in equity.
Registration is not necessary to the validity of a deed, and, as the title was once in the father, the destruction of the deed did not divest it. There certainly can exist no distinction between a fraudulent sale and a fraudulent purchase. Gil. L. E. 95; Esp. 780.
WHITE, on the same side. — The conveyance was voluntarily given up by the father, which did not destroy the title vested by the deed. The provision of the law for the registration of deeds was intended for the protection of creditors and purchasers from fraud. The construction contended for will nurture the very thing the act designed to suppress. He read the eighth section of the Act 1715, c. 38, which is copied from the Act of 27 Eliz.; and argued that, it covered the case before the Court. Mr. Miller contends that the record ought to show a legal title. In ejectment, the record never shows title; it is for the evidence to do that. We are told that our remedy is in equity. If this is a fraudulent transaction, why not be relieved here? Law, as well as equity, can take cognizance of fraud, let it present itself in what shape it may. As defendants in ejectment, we are authorized to repel the claim of the plaintiff, though it may be necessary to go into equity to render our case more secure, lest witnesses *Page 47 
may die, and several ejectments may be brought. The case in Rob. on Frauds, relied on by Mr. Miller, does not apply here. The title in that case never was in the debtor, here it was; and Stinson the father cannot deprive himself of it to the injury of his creditors. It is not a fraudulent purchase in the sons we are contending for; but a fraudulent alienation in the father in conveying again to Vance, who conveys to the sons.
CAMPBELL, for the plaintiff, was stopped by the Court.